UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHAEL ANTHONY FROST,

Defendant (2).

Case No. 18-cr-20206

UNITED STATES DISTRICT COURT
JUDGE GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR PRETRIAL RELEASE AND REVOCATION OF DETENTION ORDER [#132]

### I. INTRODUCTION

On October 15, 2019, pursuant to a Rule 11 plea agreement, Defendant Michael Anthony Frost ("Defendant") pleaded guilty to conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841, 846. ECF No. 101. Specifically, Defendant admitted that he conspired to distribute 100 grams or more of heroin and twenty-eight grams or more of crack cocaine with co-defendant Jhamall McGaughy. *Id.* at PageID.467. Defendant has been detained since March 19, 2019. ECF Nos. 50, 54. He is scheduled to be sentenced on June 2, 2020.

Presently before the Court is Defendant's Motion for Pretrial Release and Revocation of Detention Order, filed on April 6, 2020. ECF No. 132. The

Government filed a Response on April 10, 2020.  ECF No. 134.  After reviewing the parties' briefs, the Court finds that no hearing on the Motion is necessary.  *See* E.D. Mich. LR 7.1(f)(2).  For the reasons that follow, the Court will **DENY** Defendant's Motion [#132].

## II. BACKGROUND

The instant action stems from a drug and prostitution enterprise in the Eastern District of Michigan and elsewhere between 2017 and 2018.  Beginning in December 2017, Defendant allowed co-defendant Jhamall McGaughy to move into his house on Cheyenne Street to operate the enterprise.  ECF No. 65, PageID.216. Defendant was a "regular supplier" of controlled substances, including heroin, cocaine, and crack cocaine, to co-defendant.  *Id.*

On March 19, 2019, Defendant was arraigned on a Third Superseding Indictment.  ECF No. 50.  He consented to detention on that same day, thus waiving his right to a hearing.  ECF No. 54.  On May 4, 2019, Defendant filed a Motion for Revocation of Detention Order.  ECF No. 64.  Defendant withdrew this motion on July 19, 2019.  ECF No. 78.  On October 15, 2019, Defendant pleaded guilty to conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841, 846. ECF No. 101.  In his Motion, Defendant asserts that he is currently being held at Washtenaw County Jail.  ECF No. 132, PageID.610.  In its Response, the Government contends that Defendant is in fact detained at Livingston County Jail.

ECF No. 134, PageID.627.   After receiving the parties' briefings, the Court confirmed that Defendant is at Livingston County Jail.

Defendant is scheduled to be sentenced on June 2, 2020 before this Court.

### III. LAW & ANALYSIS

#### A. COVID-19

COVID-19 is an abbreviation for the novel coronavirus disease of 2019, a respiratory illness that spreads easily and sustainably in the community through respiratory droplets produced when an infected person coughs or sneezes. *See Centers for Disease Control and Prevention Coronavirus Disease 2019 Frequently Asked Questions,* Center for Disease Control https://www.cdc.gov/coronavirus/2019-ncov/faq.html#How-COVID-19-Spreads (last updated April 13, 2020).  While it is thought that people are most contagious when symptoms are present, the virus has also been detected in asymptomatic persons.  *See id.*

There is no vaccine to prevent COVID-19, nor is there antiviral medication that can treat it.  *Id.*; *see also* ECF No. 132, PageID.614.  According to the Center for Disease Control ("CDC"), "[t]he best way to prevent illness is to avoid being exposed to the virus."  *Id.*  The CDC recommends, among other things, that people clean their hands often or use hand sanitizer when soap is unavailable; avoid close contact with other people (at least six feet in distance); and clean and disinfect

frequently touched surfaces daily, such as tables, doorknobs, light switches, and countertops. *Id.* The CDC also recommends that if an individual becomes sick, he or she should isolate from others by staying in a specific sick room and using a separate bathroom if available. *Id.*

The CDC has indicated that certain classes of individuals are at higher risk for developing severe illness if exposed to the novel coronavirus of 2019. *Id.* Older adults—65 or older—and people suffering from underlying medical conditions, such as moderate to severe asthma, chronic lung disease, serious heart disease, severe obesity, diabetes, liver disease, kidney disease; or people who are immunocompromised, such as those who are undergoing cancer treatment, smokers, bone marrow or organ transplant recipients or donors, people with immune deficiencies, poorly controlled HIV or AIDS sufferers; and those who have prolonged use of corticosteroids and other immune weakening medications are at higher risk of developing serious illness if they are exposed to COVID-19. *Id.* While it has been accepted that older adults are the most vulnerable, the CDC reported that 38% of the 508 hospitalized patients were younger–between 20 and 54 years of age. *See Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19)–United States, February 12-March 16, 2020*, Center for Disease Control (Mar. 18, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm.

At the time of this writing, the majority of states have issued stay-at-home orders, including Governor Gretchen Whitmer of Michigan.  Governor Whitmer issued a state of emergency when the State's first two cases of coronavirus were reported on March 10, 2020.  Executive Order, No. 2020-04 (Mar. 10, 2020).  Governor Whitmer has since issued a series of other executive orders to help prevent the spread of this novel disease.  *See Executive Orders*, Michigan.gov, https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705---,00.html (last visited April 15, 2020).  Even with such executive action, Michigan continues to experience staggering numbers of confirmed COVID-19 cases and deaths.  At the time of this writing, a little more than thirty days after the initial two COVID-19 cases were reported the State, there are more than 29,200 confirmed cases in Michigan. *See MDOC Response and Information on coronavirus (COVID-19)*, Medium, https://medium.com/@MichiganDOC/mdoc-takes-steps-to-prevent-spread-of-coronavirus-covid-19-250f43144337 (last updated April 16, 2020) [hereinafter Medium MDOC Response and Information].  There are now 1,921 lives lost to COVID-19 in Michigan alone.  *Michigan surpasses 1,900 deaths due to coronvarius; 28,059 cases total in state*, Detroit Free Press (April 15, 2020, 3:03 PM)  https://www.freep.com/story/news/local/michigan/2020/04/15/michigan-coronavirus-cases-deaths/5138838002/.

Incarcerated individuals, and the employees who work in correctional institutions, are not immune to this pandemic.  *See* ECF No. 132, PageID.613.  Indeed, these individuals face an even greater risk.  On March 23, 2020, the CDC acknowledged that correctional and detention facilities "present[ ] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors."  *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Centers for Disease Control (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html [hereinafter CDC Guidance on Correctional and Detention Facilities]; *see also United States v. Eubanks*, No. 17-20184, 2020 WL 1814090, at *1 (E.D. Mich. April 9, 2020).  COVID-19 is dangerous everywhere, but the novel disease is especially harmful within correctional institutions, where incarcerated individuals have a limited ability to exercise encouraged community practices such as social distancing and frequent handwashing.  *See* CDC Guidance on Correctional and Detention Facilities; *see also* ECF No. 132, PageID.613 ("The recommended social distancing measures are nearly impossible to implement and adhere to in detention facilities where detained individuals share dining, bathing and sleeping areas[.]").  Further, a "low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, [and] highly congregational environments" increase the risk of danger

to incarcerated individuals.   CDC Guidance on Correctional and Detention Facilities; *see also United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020).   The Court takes notice of the Government's assertion that "simply going to the grocery store" is analogous to a detention facility's risk of exposure to COVID-19.   ECF No. 134, PageID.631–32.   In light of the CDC's information concerning the unique challenges which COVID-19 presents to the vulnerable communities in correctional facilities, such allegations are disingenuous and incorrect.   Indeed, a COVID-19 outbreak in a prison facility is not potentially problematic as suggested by the Government in its Response, ECF No. 134, PageID.631, it is problematic.

As of April 16, 2020, there are 499 prisoners who have tested positive for COVID-19 in MDOC facilities.   *See* Medium MDOC Response and Information. These numbers are growing sharply.   According to MDOC, there have been 17 COVID-19 related deaths within its prisons, including thirteen inmates; two corrections professionals; a corrections transportation officer; and a word processing assistant.   *Id.*   The Court denotes that as of the writing of this Order, there are no confirmed cases at Livingston County Jail, where Defendant is currently being held. *See id.*; *see also* ECF No. 134, PageID.631 ("[A]s of [April 9, 2020], there were no confirmed cases at the facility.").

To its credit, MDOC has implemented a number of measures to reduce COVID-19's spread in its facilities.  *See 2020 Coronavirus (COVID-19) Response Q&A*, Michigan Department of Corrections, https://www.michigan.gov/corrections/0,4551,7-119-9741_12798-521973-- ,00.html (last visited April 15, 2020); *see also* Medium MDOC Response and Information.  For example, all MDOC staff transporting prisoners on or off grounds are required to be dressed in full personal protective equipment (PPE).  Medium MDOC Response and Information.  Visitation at facilities throughout Michigan has been suspended.  Transfers of prisoners or staff between facilities will not be authorized without the approval of the Assistant Deputy Director or higher.  *Id.*  Further, its facilities have been equipped with an increased supply of soap.  MDOC is following the Michigan Department of Health and Human Services protocol and is accordingly scheduling appointments between facility healthcare staff and prisoners who have presented COVID-19 symptoms.  *Id.*

In its Response, the Government cites to specific measures at Livingston County Jail.  For example, the facility has been on lockdown and has been restricting visitors for several weeks.  ECF No. 134, PageID.631.  Further, the facility has increased the "extent and frequency of cleaning, and has taken steps to decrease the population density[.]"  *Id.*  Any new detainees must now quarantine for fourteen days.  *Id.*

## B. Defendant's Due Process Argument

Defendant first advances an argument based on constitutional protections of pretrial detainees under the Due Process Clause of the Fifth Amendment.  ECF No. 132, PageID.614–15.  He argues that the conditions of his confinement, which "create an unreasonable risk of exposure to COVID-19," should be deemed "punitive" in violation of the Fifth Amendment.  *Id.* at PageID.615.  Notably, while the Government opposes Defendant's instant Motion, it fails to specifically address Defendant's Fifth Amendment argument in its Response.  ECF No. 134.

In evaluating whether a condition of pretrial detainment violates the Fifth Amendment, courts must determine whether the condition amounts to "punishment."  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  The Supreme Court has explained:

> if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment.  Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Id.* at 539 (internal quotation marks omitted).  Accordingly, the question before the Court is whether Defendant's detention is reasonably related to a legitimate government objective.  *See, e.g.*, *United States v. McDonald*, No. 2:19-cr-00312,

2020 WL 1659937, at *3 (D. Nev. April 3, 2020); *United States v. Cox*, No. 2:19-cr-00271, 2020 WL 1491180, at *6 (D. Nev. Mar. 27, 2020).

Here, Defendant's detention is reasonably related to the legitimate government interests of protecting the community and ensuring his appearance. The Court initially detained Defendant, to which Defendant consented, in March 2019. *See* ECF No. 54. According to his bail report, which was prepared by Pretrial Services at the time of Defendant's arraignment, Defendant poses a risk of nonappearance for several reasons, including his criminal activity while under supervision; lack of verifiable employment; and his criminal history. Def's Pretrial Services Report 9. Further, Pretrial Services determined that Defendant poses a risk to the community. *Id.* Pretrial Services concluded that there was no condition or combination of conditions that could reasonably ensure Defendant's appearance and the safety of the community. *Id.* In its Response to the instant motion, the Government emphasizes Defendant's "significant criminal history" and "poor track record of complying with conditions of probation." ECF No. 134, PageID.628–29.

Pretrial detention, for purposes of protecting the community and ensuring a defendant's appearance, is not punitive under the Due Process Clause. *See United States v. Salerno*, 481 U.S. 739, 748 (1987). "[E]ven if pretrial detention during a worldwide pandemic seems punitive in the lay sense, that restriction cannot violate due process *unless* there is also an express intent to punish with no rational

relationship to legitimate government interests." *United States v. Shelton, et al.*, No. 3:19-cr-14, 2020 WL 1815941, at *7 (W.D. Ky. April 9, 2020) (internal citation omitted) (emphasis added).  The Court finds that there is no arbitrary purpose and punitive intent in detaining Defendant before his sentencing hearing in light of the legitimate government interests of protecting the community and ensuring his appearance.

Finally, Defendant asserts that pretrial detainees have a substantive due process interest in freedom from deliberate indifference to their medical needs.  ECF No. 132, PageID.615.  He cites to one Seventh Circuit case to support his argument, *Miranda v. City of Lake*, 900 F.3d 335, 352 (7th Cir. 2018).  *See id.*  Defendant explains that release is appropriate in his case given his "age and condition" in order to ensure his constitutional rights are protected.  *Id.*

The Sixth Circuit has recognized that the government "has an 'obligation to provide medical care for those whom it is punishing by incarceration.'"  *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Oliver Nissan Awshana, et al. v. Rebecca Adducci, et al.*, No. 20-10699, 2020 WL 1808906, at *3 (E.D. Mich. April 9, 2020) (internal citation omitted).

The Court finds that Defendant's analysis as to this point is deficient. Specifically, Defendant cites the lack of testing at the Washtenaw Detention Facility. *Id.* As explained above, Defendant is currently being held at Livingston County Jail; therefore, details concerning the conditions at Washtenaw Detention Facility—while troubling—are not relevant to Defendant's instant Motion.

Furthermore, the Court takes issue with Defendant's lack of information as to how the detention facility is being indifferent towards him or what his specific, current medical needs are. Rather, Defendant cites generally to how "[t]he current conditions of confinement create an unreasonable risk of exposure to COVID-19" and how facilities lack "necessary supplies for personal and environmental hygiene to protect against contraction of the virus." *Id.* While these assertions concerning correctional facilities are true in light of CDC Guidance on Correctional and Detention Facilities, the Court concludes that these generalities are not enough to grant Defendant temporary release on this basis.

## C.  Defendant's Arguments Pursuant to 18 U.S.C. §§ 3143, 3145(c)

Next, Defendant argues that his release is warranted due to the exceptional circumstances presented by the COVID-19 pandemic. ECF No. 132, PageID.615. The Government contests Defendant's eligibility for release under both 18 U.S.C. § 3143 and 18 U.S.C. §3145(c). ECF No. 134, PageID.627, 630.

Defendant pleaded guilty to an offense prescribed in the Controlled Substances Act for which the maximum sentence is at least ten years.[1] *See* 18 U.S.C. § 3142(f)(1)(C).  He is therefore subject to mandatory pre-sentence detention absent an applicable exemption.  *See* 18 U.S.C. 3143(a)(2) (cross-referencing offenses listed under 18 U.S.C. § 3142(f)(1)(A)–(C)); *see also* ECF No. 134, PageID.628. Section 3143(a)(2) exempts a defendant when there is a "substantial likelihood that a motion for acquittal or new trial will be granted," 18 U.S.C. § 3143(a)(2)(A)(i), or when "the Government has recommended that no sentence of imprisonment be imposed," 18 U.S.C. § 3143(a)(2)(A)(ii).  If a defendant can meet either of those prongs, a defendant must then satisfy the remaining requirement of § 3143(a)(2)(B) to be eligible for release.  Section 3143(a)(2)(B) requires "clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." 18 U.S.C. § 3143(a)(2)(B).

Defendant acknowledges the "presumption for remand under 18 U.S.C. § 3143(a)(2)." ECF No. 132, PageID.616.  In fact, he declines to argue that he is eligible under either prong § 3143(a)(2)(A).  The Government argues that Defendant cannot meet either prong.  ECF No. 134, PageID.628.  First, Defendant pleaded guilty, making neither motion available under § 3143(a)(2)(A)(i).  *Id.*; *see also* ECF

---

[1] The Government notes that Defendant faces a statutory term of imprisonment of 5-40 years since his conviction involved at least 100 grams of heroin under 21 U.S.C. § 841(b)(1)(b)(i).  ECF No. 134, PageID.627–28.

No. 101.  Second, Defendant is subject to a five year mandatory minimum sentence. ECF No. 134, PageID.628.  The Government explains further that it will be seeking a "significant term of imprisonment in light of the guideline range of 188-235 months and the 5 year mandatory minimum." *Id.*  The Court thus agrees with the Government that neither of the statutory conditions can be met.  The question before the Court, therefore, is whether Defendant may avail himself of the exceptional circumstances under 18 U.S.C. § 3145(c).  ECF No. 132, PageID.616.

Section 3145(c) permits a judicial officer to release a defendant subject to detention under § 3143(a)(2) if he or she "meets the conditions of release set forth in section 3143(a)(1)" and "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."  18 U.S.C. § 3145(c).  In order to satisfy 18 U.S.C. § 3143(a)(1), the defendant must show by "clear and convincing evidence" that he or she is "not likely to flee or pose a danger to the safety of any other person or the community if released" under conditions set forth by the Court.  18 U.S.C. § 3143(a)(1).  Accordingly, Defendant must demonstrate both (1) clear and convincing evidence that he is not a flight risk or a danger to others and (2) an exceptional reason why his detention is inappropriate.  *See United States v. Christman*, 596 F.3d 870, 870 (6th Cir. 2010) (Mem.).

As to the first requirement, Defendant argues that he will self-isolate in an "approved residence while COVID-19 containment efforts continue and as he awaits

sentencing." ECF No. 132, PageID.616. He also asserts that his location can be monitored by a GPS location device. *Id.* According to Defendant, these circumstances mitigate his risk of non-appearance and danger. *Id.* The Government contests Defendant's assertions, emphasizing Defendant's lack of provided location to self-isolate. ECF No. 134, PageID.630. The Government sets forth "two possible locations" for Defendant, his grandmother's or his former girlfriend's residences. *Id.* It argues that neither of these locations are suitable. *Id.*

The Court agrees with the Government that Defendant's general assertions as to where he can self-isolate are insufficient to demonstrate that he would not pose a danger to the public if released. The Court recognizes that Defendant pleaded guilty to a serious drug trafficking offense, one that involves more than 100 grams of heroin and more than twenty-eight grams of crack cocaine. ECF No. 101, PageID.467. The Court also takes notice of Defendant's extensive criminal history in his Pretrial Services Report. *See* ECF No. 134, PageID.629. Several of these past convictions include drug felonies. *Id.* Further, Defendant has committed criminal activity while under supervision. *Id.*

Finally, the Court acknowledges Pretrial Services' opinion that no additional information was presented in Defendant's instant Motion that would indicate a change in its initial bail report. As explained above, Defendant's initial bail report, which was prepared at the time of Defendant's arraignment, indicates that Defendant

poses both a risk of nonappearance and a risk of danger.  Def's Pretrial Services Report 9.  Defendant's suggestion for the use of location monitoring, without more, is not enough to demonstrate clear and convincing evidence that he is not a flight risk or a danger to others.

Accordingly, Defendant cannot avail himself of the exceptional circumstances under 18 U.S.C. § 3145(c).  The Court need not discuss whether COVID-19 constitutes an "exceptional reason" in this case since Defendant cannot demonstrate that he would not pose a danger to the public if released.  *United States v. Eubanks*, No. 17-20184, 2020 WL 1814090, at *2 (E.D. Mich. April 9, 2020).  In sum, while the Court is concerned with the special risks that COVID-19 poses to incarcerated individuals like Defendant, the Court concludes that Defendant does not meet the necessary requirements for release under 18 U.S.C. §§ 3143(a)(2) or 3145(c).

## V. CONCLUSION

For the reasons articulated above, **IT IS ORDERED** that Defendant's Motion for Pretrial Release and Revocation of Detention Order is **DENIED** [#132].

**IT IS SO ORDERED.**

Dated:        April 17, 2020


s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 17, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager